UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────

DA'SHAWN RUSSELL,

                     Petitioner,

  v.

                                     9:15-CV-1119

JAMES P. THOMPSON,                  (TJM)

                     Respondent.

───────────────────────────────

APPEARANCES:

DA'SHAWN RUSSELL
13-B-0551
Petitioner, pro se
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

HON. ERIC T. SCHNEIDERMAN        ALYSON J. GILL, AAG
Attorney for Respondent
Office of the Attorney General
120 Broadway
New York, New York 10271

THOMAS J. MCAVOY
Senior United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

       Petitioner Da'Shawn Russell filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Memorandum and Exhibits.

Petitioner argues that trial counsel was ineffective and coerced his guilty plea (Grounds One,

Two and Four) and the evidence against him was obtained pursuant to an unconstitutional

search and seizure (Ground Three).  Pet. at 4-5; Dkt. No. 1-1 at 1, 14-15, 24, 29-31, 37-39,

41-44, 46-48, 55-57.[1]  Respondent opposes the petition.  Dkt. No. 13, Respondent's

Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem.");

Dkt. No. 13-1, Declaration; Dkt. No. 14,  State Court Record ("SR").  Petitioner filed a reply.

Dkt. No. 23, Reply to Respondent's Answer to the Petitioner['s] Petition for a Writ of Habeas

Corpus ("Reply"); Dkt. No. 23-1, Exhibits.

For the reasons that follow, the petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

In July 2012, a Cayuga County grand jury returned Indictment Number 2012-141,

charging petitioner with third degree criminal possession of a controlled substance (two

counts) (N.Y. Penal Law §§220.16(1) and (12)), second degree criminal use of drug

paraphernalia (two counts) (N.Y. Penal Law §§220.50(2) and (3)), and resisting arrest (N.Y.

Penal Law §205.30).  Dkt. No. 14 at SR 117-18, Indictment No. 2012-141.  The charges

arose from petitioner's possession of cocaine with the intent to sell it and drug paraphernalia

used to package or dispense narcotics in Auburn, New York on or about June 13, 2012.  *See*

*id*.  Police executed a search warrant at an apartment where petitioner was staying and

recovered 36.2 grams of cocaine, glassine bags, two scales, a cane sword, a metal knuckle

knife, and a loaded shotgun.  R. Mem. at 3; *see* Dkt. No. 14 at SR 122-30, Search Warrant.

On August 15, 2012, the prosecutor offered petitioner a plea agreement.  Dkt. No. 14

at SR 120, Letter from Jon E. Budelman to Joseph J. Sapio, Aug. 15, 2012.  Under its terms,

petitioner was required to plead guilty to one count of third degree criminal possession of a

controlled substance in exchange for a determinate sentence of 6 years in prison followed by

---

[1]  The cited page numbers for petitioner's papers refer to those generated by the Court's electronic filing system ("ECF").

2 years post release supervision.  Dkt. No. 14 at SR 120; R. Mem. at 1.  The prosecutor

pointed out that petitioner was a second felony drug offender, and that he had not yet been

indicted for charges related to the weapons recovered pursuant to the search warrant or for

other narcotics charges related to his sale of controlled substances to the "Task Force[.]"  *Id.*;

*see* Dkt. No. 14 at SR 158, Certification of Conviction; SR 159-65, Judgment in a Criminal

Case.  The prosecutor also explained that if motions were filed, he would "assume the offer

is rejected and it will be revoked," and subsequent offers would be "more severe."  Dkt. No.

14 at SR 120.

On September 4, 2012, petitioner's counsel filed several motions related to Indictment

Number 2012-141.  Dkt. No. 14 at SR 134-35, Demand to Produce; SR 169-71, Demand for

Bill of Particulars.  He also filed omnibus motions seeking, among other things, suppression

of evidence.  *Id.* at SR 173-76, Notice of Omnibus Motion; SR 177-84, Affirmation in Support

of Omnibus Motion.

In a letter dated September 25, 2012, the prosecutor informed petitioner's counsel that

evidence related to several new charges was presented to a grand jury, but that the grand

jury proceedings were adjourned at counsel's request to give petitioner time to decide

whether he wanted to testify.  Dkt. No. 14 at SR 121, Letter from Jon E. Budelman to Joseph

J. Sapio, Sept. 25, 2012.  The prosecutor withdrew the plea offer made on August 15, 2012,

explaining that counsel was informed in court on September 24, 2012, that the offer was

good only if petitioner accepted it that day, and that if he did not, the new charges would be

presented to the grand jury.  *Id.*  He further stated a new offer would be extended "following

the outcome" of the grand jury presentment, scheduled to continue on October 3, 2012, and

that if petitioner wanted to testify at grand jury, he should appear on that date "prepared to

execute a Waiver of Immunity" form.  *Id.*

A Cayuga County grand jury subsequently returned Indictment Number 2012-217, charging petitioner with four counts of third degree criminal sale of a controlled substance (N.Y. Penal Law § 220.39(1)), four additional counts of third degree criminal possession of a controlled substance (N.Y. Penal Law §220.16(1)); two counts of third degree criminal possession of a weapon (N.Y. Penal Law §265.02(1)) and one count of fourth degree criminal possession of a weapon (N.Y. Penal Law §265.01(4)).  Dkt. No. 14 at SR 114-16, Indictment Number 2012-217.  The weapons charges arose from the items recovered pursuant to the June 2012 search warrant.  *See id.*  The narcotics sales and possession charges arose from separate cocaine sales conducted by petitioner on November 9, 2011, March 19, 2012, and May 25, 2012.  *Id.*  Petitioner was arraigned on the new indictment on October 23, 2012.  Dkt. No. 23-1 at 12-14, Arraignment/Motions Transcript.

At an October 30, 2012 court appearance, counsel stated he was "a little late filing the omnibus motions" because he thought the parties were "looking at a plea."  Dkt. No. 1-1 at 50, Motions Transcript.  Counsel explained that petitioner wanted "a copy of the search warrant and search warrant application," because both pending indictments "have to do with" those documents, which were not contained in the People's motion responses.  *Id.*  The prosecutor explained that the search warrant application was "sealed upon issuance" and he could not disclose it unless the trial court ordered it unsealed.  *Id.* at 51.  The court did so, and the prosecutor gave counsel a redacted copy of the search warrant application.  *Id.*

Counsel explained that petitioner did not want to file motions, but did so to obtain a copy of the search warrant application.  Dkt. No. 1-1 at 51-52.  He told the court petitioner

4

"wanted to take this six years that's been said on the record on a multitude of occasions." Dkt. No. 1-1 at 52. Counsel told the court he would review the search warrant application with petitioner and did not have to "argue or belabor the motions," and would "stand on [his] motion papers," but would like "a conference at some point with regards to some sort of deal[.]" *Id.* The prosecutor placed his argument on the motions on the record. *Id.* at 52-53. The trial court reserved its decision on whether there were deficiencies in the grand jury proceedings, and granted counsel's request for hearings on his motions to suppress statements and whether petitioner could be questioned about his criminal history if he testified at trial. Dkt. No. 1-1 at 53-54. The court also stated it would "take a further look upon the probable cause based upon the search warrant application" and reserved decision "on the issue for a *Mapp*[2] hearing." *Id.*

On November 13, 2012, the parties appeared in court for a pretrial conference. Dkt. No. 1-1 at 58-63, Pretrial Transcript. Counsel acknowledged petitioner's complaint that "in the last couple of weeks" counsel did not "meet with him." *Id.* at 59. But he explained that he met with petitioner several times "throughout the proceedings," petitioner had a copy of the "redacted search warrant and search warrant application," the People answered the original motions, and that he did not yet file motions "on the new set of criminal charges." *Id.* The parties agreed that the prosecutor offered a new plea agreement under which petitioner would serve 7 years in prison unless petitioner pleaded guilty that day, in which case petitioner would receive a sentence of 6½ years in prison, followed by 2 years post-release supervision in exchange for his plea to third degree criminal sale of a controlled substance in

---

[2] A *Mapp* hearing is a hearing held to determine whether evidence should be suppressed because it was obtained in violation of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961).

satisfaction of Indictment 2012-217, and criminal possession of a controlled substance in satisfaction of Indictment 2012-141. *Id.* at 60-61.

Petitioner told the court he understood the plea discussions, and he was "willing to accept the seven" year offer because he wanted time to talk to his family before accepting the plea offer. Dkt. No. 1-1 at 61-62. The prosecutor reiterated that the 6½ year offer was valid only if petitioner accepted it that day and, if not, he faced 7 years in prison, assuming petitioner accepted that offer before filing additional motions. *Id.* at 62. The court asked petitioner if he still wanted to adjourn the case, and he replied, "Yes your Honor, please." *Id.* at 62.

On November 27, 2012, petitioner agreed to plead guilty to one count of third degree possession of a controlled substance in satisfaction of Indictment Number 2012-141, and one count of third degree criminal sale of a controlled substance in satisfaction of Indictment Number 2012-217. Dkt. No.14 at SR 3-4, Plea Transcript. In exchange for his plea, petitioner would be sentenced to serve concurrent determinate terms of 7 years on each count, followed by 2 years of post-release supervision. *Id.* at 4.

Petitioner confirmed that he spoke to counsel about the case and about pleading guilty, and that he was satisfied with counsel's services. Dkt. No. 14 at SR 5. He admitted that as charged under count two of Indictment Number 2012-141, on June 13, 2012, he knowingly and unlawfully possessed greater than one-half ounce of cocaine in a book bag in the City of Auburn. *Id.* at SR 7-8. The court next asked petitioner if, as charged under count one of Indictment Number 2012-217, he unlawfully sold cocaine in the City of Auburn on November 9, 2011. *Id.* at SR 8. Petitioner stated, "I mean I guess that's what they said, your

Honor.  I know that's not the proper way for me to answer.  But I have issues with that myself.  But to satisfy this plea right here, yes, I guess, I did."  *Id.* at SR 7.  The court then told petitioner there were other sales charged in the indictment, and asked petitioner if he remembered them.  *Id.* at SR 8.  Petitioner stated he could plead to the sale charged in count seven of the indictment, that took place of May 25, 2012, in the City of Auburn, because he was "going to plead to one of the sales."  *Id.* at SR 8.  He admitted to selling cocaine on May 25, 2012, at approximately 12:06 p.m., in the City of Auburn.  *Id.*  When the court asked petitioner to state in his own words what he did, petitioner answered, "Wow."  *Id.*  Petitioner first stated that he possessed cocaine on May 25, 2012, but then stated, "Not that I know, your Honor, no.  I mean - well, yeah.  All right then.  Yeah, yeah.  I mean I'm just being honest.  That's all."  *Id.* at SR 9.

At that point the prosecutor indicated concern about whether petitioner could not recall dates or a specific instance of conduct, or whether petitioner was denying the allegations to which he was attempting to enter a plea.  Dkt. No. 14 at SR 9.  Under further questioning by the prosecutor, petitioner admitted that in 2011 and 2012, he was selling cocaine in exchange for money, but that he could not specifically recall what happened on May 25, 2012.  *Id.* at SR 9-10.  Counsel asked for a "brief offer of proof" from the prosecutor on what the evidence relating to the May 25, 2012 sale would be at a trial.  *Id.* at SR 10.  The prosecutor replied that the evidence would show petitioner was contacted on a cell phone by a police informant and arranged to meet the informant, who was given $100.00 to buy cocaine.  *Id.* at SR 11.  An investigator watched petitioner leave his residence and drive away in a black Ford Expedition.  *Id.*  Petitioner met the informant and gave the informant ".3

grams of cocaine, eight individual bags in exchange for $100." *Id.* The exchange was recorded. *Id.* Counsel was satisfied with the offer of proof, and petitioner stated he would plead guilty. *Id.* at 11-12.

Petitioner then acknowledged by pleading guilty, he was giving up the right to suppress evidence, any statements he made to police, and any challenge to his identity as a participant in the crimes. Dkt. No. 14 at SR 12. He also confirmed he understood that he was giving up the right to a jury trial, at which he could confront and cross-examine the People's witnesses, testify and call witnesses on his own behalf, and that he was giving up any defense he may have to the charges. *Id.* at SR 12-13. Petitioner understood his plea was "the same as a verdict of guilty rendered by a jury after trial by jury." *Id.* at SR 13-14.

Petitioner also confirmed he understood that as part of the plea agreement, he was waiving his right to appeal. Dkt. No. 14 at SR 14. The court explained that unless waived, a defendant has the right to appeal a conviction, and to representation on appeal, and that a defendant may "generally through his attorney argue that an error took place" in the trial court "which requires reversal of the conviction and either new proceedings ... or a dismissal." *Id.* If "new proceedings" were ordered, petitioner "may be returned" to the trial court "to again face these charges." *Id.* Finally, the court told petitioner he could also argue that "the sentence imposed was harsh and excessive and request a lesser sentence if one is permitted by law." *Id.* Petitioner told the court he understood, and that he waived his right to appeal voluntarily of his own free will. *Id.* at SR 14-15.

The court told petitioner it would consider recommending that he receive substance abuse treatment at the time of sentencing. Dkt. No. 14 at SR 15. The court also explained

8

that the sentence promise was conditional and, if the court decided not to impose the promised sentence after reviewing the pre-sentence report, petitioner would be permitted to withdraw his plea. *Id.* at SR 15-16.

Petitioner then admitted he was convicted in federal court on January 16, 2001, upon his plea, of felony possession of a firearm in furtherance of a drug trafficking crime. Dkt. No. 14 at SR 16-19. He confirmed that no promises other than those on the record were made to induce his plea, he was not threatened or forced to plead guilty, and he was voluntarily pleading guilty. *Id.* at SR 20. He also told he court he did not consume alcohol, drugs or medications in the twenty-four hours preceding the plea. *Id.* at SR 20-21. Finally, petitioner confirmed he understood his plea to felony charges "may be the basis for additional or different punishment" if he was "ever again in the future convicted of a crime." *Id.* at SR 21. Petitioner formally entered his guilty pleas, and the court found them "acceptable." *Id.* Petitioner understood the court's warning that if he failed to appear at sentencing, or got into further trouble, the sentencing commitment was no longer binding and he could be sentenced to "twelve years consecutively" on each count to which he pleaded guilty, or up to "twenty-four years along with three years of post-release supervision." *Id.* at SR 22-23.

On February 15, 2013, petitioner was sentenced as promised. Dkt. No. 14 at SR 24, Sentencing Transcript.[3] The court stated that if petitioner qualified for participation in a drug rehabilitation program in prison, it did not "have a problem" with his participation. *Id.* at SR 32.

---

[3] Police seized $690.00 in case from petitioner's person when police executed the search warrant. Dkt. No. 14 at SR 31. Petitioner forfeited the money, which was used to pay the court's surcharge and restitution. *Id.* at SR 33. Petitioner was ordered to pay a $50.00 DNA Data Bank fee. *Id.* at SR 33-34.

In October 2013, petitioner moved to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") §440.10. Dkt. No. 14 at SR 36-37, Notice of Motion to Vacate Judgment Pursuant to C.P.L. 440.10; SR 38-58, Affidavit and Memorandum of Law. He argued, among other things, that the search warrant was invalid and counsel was ineffective for filing motions late and for failing to timely obtain a copy of, and challenge, the search warrant. *See id.* The People opposed the motion, and petitioner filed a reply. Dkt. No. 14 at SR 59-67, People's Affirmation in Opposition to Defendant's CPL §440.10 Motion.

On December 12, 2013, the trial court denied petitioner's motion without a hearing. Dkt. No. 14 at SR 69-74. The court denied most of petitioner's claims pursuant to CPL §440.10(2)(b) because they were either appealable or pending on direct appeal. In the alternative, the court concluded that petitioner's "issues of an illegal search and seizure and suppression of physical evidence" were part of an omnibus motion that was "heard and determined," and that when he entered his plea, petitioner "acknowledged his understanding that he was giving up any rights he might have to suppress evidence." *Id.* at SR 73. The court also denied petitioner's ineffective assistance of counsel claims, ruling that the allegations of misconduct made in petitioner's unsworn, "self-serving" affidavit were not supported by the record or any other credible evidence. *Id.* at SR 72. The court further found that "the record amply show[ed]" petitioner's "plea was provident, voluntary and knowingly made and that he received effective assistance of counsel." *Id.* When asked by the court if petitioner was satisfied with his legal representation, petitioner made "no mention of any dissatisfaction with his assigned attorney," and petitioner received "a very advantageous plea bargain." *Id.* at SR 73. On April 28, 2014, a justice of the Appellate Division denied petitioner's application for leave to appeal. Dkt. No. 14 at SR 87, Order.

On October 8, 2014, appellate counsel filed a brief in which he argued: (1) the People punished petitioner for requesting a copy of the search warrant by indicting him on eleven additional charges after his request; and (2) the search was invalid and the evidence seized pursuant to the search warrant should have been suppressed. Dkt. No. 14 at SR 89-99, Brief of Appellant; Dkt. No. 14 at SR 100-195, Appendix.

Petitioner filed a pro se supplemental brief in which he argued: (1) he was punished for requesting a copy of the search warrant and search warrant application; (2) the search was invalid and the evidence should have been suppressed; and (3) counsel was ineffective because he refused to argue the suppression motion. Dkt. No. 14 at SR 196-207, Brief for Appellant. The People opposed the appeal. Dkt. No. 14 at SR 208-224, Brief on Behalf of Respondent.

On May 1, 2015, the Appellate Division affirmed. *People v. Russell*, 128 A.D.3d 1383 (4th Dep't. 2015); *People v. Russell*, 128 A.D.3d 1384 (4th Dep't. 2015). The court first found that petitioner's "challenges to the search warrant are encompassed by his valid waiver of the right to appeal." *Russell*, 128 A.D.3d at 1384. The court further noted that because petitioner "pleaded guilty before the court issued a suppression ruling with respect to the evidence seized from his home pursuant to the search warrant, he forfeited the right to raise the suppression issue on appeal." *Id.* Petitioner's claim that he was penalized for requesting a copy of the search warrant and application was also encompassed by the valid appeal waiver because the claim did not "implicate the voluntariness of the plea." *Id.* (quoting *People v. Zolner*, 90 A.D.3d 1551, 1552 (2011)). Finally, the court ruled petitioner's claim that counsel was ineffective for failing to pursue a suppression hearing also did not survive

his plea and appeal waiver because he failed to show that "the plea bargaining process was infected by [the] allegedly ineffective assistance or that [he] entered the plea because of [his] attorney['s] allegedly poor performance." *Id.* (quoting *People v Smith*, 122 A.D.3d 1300, 1301 (2014)) (internal quotation marks omitted, alterations in original). On July 6, 2015, the New York Court of Appeals denied leave to appeal. *Russell*, 25 N.Y.3d 1207 (2015).

This action followed.

## III.    DISCUSSION

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e

Supreme] Court's precedents.'" *Nevada v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, __ U.S. __, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

The AEDPA also foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). The statute acts as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (internal quotation marks omitted). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, __ U.S. __, 133 S. Ct.

1088, 1096 (2013).

## B. Ineffective assistance of trial counsel

In three of petitioner's grounds for relief, he alleges that trial counsel was ineffective. Specifically, petitioner argues: (1) trial counsel coerced his guilty plea by: (a) refusing to argue a motion to suppress evidence; (b) refusing to communicate with petitioner for two weeks after receiving a copy of the search warrant application; and (3) telling petitioner that if he did not plead guilty he faced "3 ½ years on each count from both indictments" (Grounds One and Two). Pet. at 4-5. He also claims that trial counsel was ineffective for failing to file timely motions and advising petitioner he did not want to file motions and should instead plead guilty (Ground Four). *Id.* at 5; *see* Dkt. No. 1-1 at 1, 46-48, 55-57; Reply at 7-17. For the reasons that follow, these claims are denied and dismissed.

### 1. Exhaustion

A district court may not grant a habeas petition until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To properly exhaust claims, petitioners must do so both procedurally and substantively. Procedural exhaustion requires petitioners to raise all claims in state court

prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires petitioners to "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). In other words, petitioners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In this case, petitioner's claims that counsel coerced his plea and was ineffective because he refused to argue the suppression motion (part of Ground One), and filed late motions (Ground Four), are exhausted because they were presented to the state courts either on direct appeal or in his CPL §440.10 motion. *See* Dkt. No. 14 at SR 38-58; SR 205. Those claims are, therefore, entitled to AEDPA deference. But petitioner's claims that counsel coerced his plea by refusing to meet with him for two weeks after obtaining a copy of the search warrant (part of Ground One), and by telling him he faced a higher sentence if he went to trial (Ground Two), are unexhausted. Petitioner did not present those claims to any state court. *See* Dkt. No. 14 at SR 38-42; 196-205; *Baldwin*, 541 U.S. at 29.

As respondent correctly states, petitioner could still present his unexhausted claims to the state courts by filing a successive CPL §440.10 motion. R. Mem. at 11. There is no time limit within which an individual must bring a section 440.10 motion, and the statute specifically states that a motion to vacate may be made "[a]t any time after the entry of a judgment[.]" CPL §440.10(1).

Section 2254 "prohibits federal courts from *granting* relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to

15

deny the petition, regardless of whether the applicant exhausted his state court remedies."
*Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)).  Unexhausted claims may be denied on the merits if the claims are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous."  *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Because petitioner's unexhausted claims fail under either standard, the Court will dispose of them.

## 2. Clearly Established Supreme Court Precedent

Once a defendant pleads guilty in open court, he or she may not "thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea" because the plea "represents a break in the chain of events which has preceded it in the criminal process."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Therefore, the focus of federal habeas review is the nature of the advice of counsel to plead guilty and the voluntariness of the plea, "not the existence as such of an antecedent constitutional infirmity."  *Id.* at 266.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and

intelligently, with sufficient awareness of the relevant circumstances and likely consequences.") (internal quotation marks and citation omitted). Statements made by a defendant during a plea colloquy constitute a "formidable barrier" that cannot be easily overcome in subsequent collateral proceedings because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Defendants also have a constitutional right to counsel that extends to the plea bargaining process. *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1384 (2012). To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice. *Lafler*, 132 S. Ct. at 1384; *Premo*, 131 S. Ct. at 739; *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Even if a petitioner can establish that deficient performance, he still must show prejudice. *Id.* at 693-94. To establish prejudice in the guilty plea context, petitioners must "show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384. In other words, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Meeting this burden is "never an easy task . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 131 S. Ct. at 739-40 (citations and internal quotation marks omitted). When reviewing a state court's decision under section 2254, "[t]he question is not whether a federal court

believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen §2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 131 S. Ct. at 788. Instead, "the question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard." *Id.*

The Supreme Court has also observed that "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one," and that "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Premo*, 131 S. Ct. at 740. It is "'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

Finally, the Supreme Court has cautioned that "[h]indsight and second guesses" about counsel's advice are "inappropriate, and often more so, where a plea has been entered without a full trial," and explained that:

> The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.

*Premo*, 562 U.S. at 745-46.

18

### 3.    Analysis

The trial court's conclusion in its decision denying petitioner's CPL §440.10 motion, that petitioner's plea "was provident, voluntary and knowingly made and that he received effective assistance," Dkt. No. 14 at SR 72, is supported by the record and is not contrary to established Supreme Court precedent.  As the court noted, petitioner "acknowledged that no threats or force had been used to get him to plead guilty and that he was pleading guilty voluntarily."  *Id.*; *see* Dkt. No. 14 at SR 5, 20.  His statements during the plea colloquy show that he understood the rights he was giving up by pleading guilty and the consequences of his plea, including his appeal waiver.  Dkt. No. 14 at SR 11-15.  Petitioner told the trial court he was satisfied with counsel's services, and "made no mention of any dissatisfaction with" counsel.  Dkt. No. 14 at SR 73; *see* SR 5, 20.  Petitioner's statements made during his plea allocution are entitled to the "strong presumption of veracity," *Blackledge,* 431 U.S. at 74, and this Court "may rely on [his] sworn statements and hold him to them."  *Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004).

The trial court's rejection of petitioner's claim that counsel was ineffective for filing late motions was also reasonable and was not contrary to *Strickland*.  The record shows that although counsel admitted he filed motions "a little late," he did so because he was attempting to negotiate a favorable plea agreement and was under the impression that petitioner intended to enter a plea.  Dkt. No. 1-1 at 50-52.  Even assuming petitioner could show that filing motions late amounted to deficient performance, he failed to show prejudice.  *Lafler*, 132 S. Ct. at 1384; *Hill*, 474 U.S. at 59.  As noted above, the trial court addressed the motions even though they were late, reserved decision on whether there were alleged grand jury deficiencies and whether the search warrant was supported by probable cause, and

19

granted counsel's request for hearings on the motion to suppress statements and on whether petitioner could be questioned about his criminal history if he testified at trial. Dkt. No. 1-1 at 53-54. No hearings were held, and no decision was issued on the motions, because petitioner opted to plead guilty, not because counsel filed the motions "a little late." Dkt. No. 1-1 at 50.

Petitioner's next claim, that counsel was ineffective for failing to argue the suppression motions, also fails. The Appellate Division rejected that claim, raised in petitioner's pro se supplemental brief, ruling that it did not survive his valid appeal waiver because he did not demonstrate that the "plea bargaining process was infected," or that he pleaded guilty because of counsel's alleged ineffective assistance. *Russell*, 128 A.D.3d at 1384. That decision was not contrary to clearly established Supreme Court precedent. *Tollett*, 411 U.S. at 266; *see Harris v. Bezio,* No. 1:11-CV-0360, 2012 WL 4026488 at *6 (W.D.N.Y. Sept. 12, 2012) (pre-plea claims of ineffective assistance of counsel, including that counsel failed to object during a suppression hearing, were foreclosed by a guilty plea because the petitioner failed to demonstrate "a link between the errors purportedly committed by counsel prior to the plea and the allegedly involuntary nature of Petitioner's decision to plead guilty."); *Canal v. Donelli*, No. 9:06-CV-1490 (TJM/DRH), 2008 WL 4287385 at *3 (N.D.N.Y. Sept. 17, 2008) (petitioner's claim that counsel's performance at a suppression hearing was deficient because he failed to call witnesses, obtain "material facts and documents" for the hearing, and object at the hearing was precluded from habeas review because "all bases for that claim occurred before [petitioner] entered a plea of guilty.").

Even assuming the claim survived petitioner's valid plea and appeal waiver, he failed to show that counsel's decision to rest on the arguments raised in his motion papers rather

than presenting oral argument was deficient, much less that he suffered prejudice as a result. *Premo*, 562 U.S. at 745-46; *Strickland*, 466 U.S. at 688.

Additionally, counsel may well have advised petitioner he did not want to file motions, should instead plead guilty, and that he faced a significantly longer sentence if he rejected the plea offer and proceeded to trial. *See* Pet. at 4, Ground Two. Petitioner was a second felony drug offender. Dkt. No. 14 at SR 16-20; N.Y. Penal Law §70.70(1)(b). On Indictment Number 2012-217 alone, he was charged with several distinct, separate felony drug sales. Dkt. No. 14 at SR 114-15; N.Y. Penal Law § 220.39(1). Each of those charges carried a maximum sentence of 12 years in prison and, because the crimes occurred on different days and times, the court could have imposed consecutive sentences. N.Y. Penal Law §§70.25; 70.70(3)(b)(I). Petitioner was also charged with two felony weapons charges, for which he faced additional possible consecutive sentences of up to four years on each count. Dkt. No. 14 at SR 115-16; N.Y. Penal Law §70.70(3)(b)(iii). Counsel negotiated a favorable sentence of 7 years in prison followed by a term of post-release supervision - far less than petitioner faced if convicted after a trial. Petitioner's decision to accept the terms of the plea, which avoided the risk of more severe punishment, does not amount to coercion. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'- and permissible - 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'") (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973) (alteration in original)); *Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) (noting that when a defendant obtains a meaningful strategic benefit by pleading guilty, most courts consider it unlikely that an

"involuntary or misguided plea" ensued).

Finally, petitioner failed to show that counsel's performance was deficient because he did not meet with petitioner for two weeks after obtaining a copy of the search warrant application, or that he suffered prejudice as a result. *Premo*, 562 U.S. at 745-46; *Strickland*, 466 U.S. at 688.

Based on the foregoing, Grounds One, Two and Four of the petition are denied and dismissed.

### C.    Fourth Amendment Claim

Petitioner argues in Ground Three of his petition that the search warrant and application were defective and evidence seized pursuant to the warrant should have been suppressed.  Pet. at 5; Dkt. No. 1-1 at 14-15, 24, 29-31, 37-39, 41-44; Dkt. No. 23, Reply  at 18-19.  This claim is not cognizable on federal habeas review.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494-95. *See Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 289 (E.D.N.Y. 2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue.").  As long as the state provides an opportunity to litigate a petitioner's Fourth Amendment claim, "it matters not whether the petitioner actually 'took advantage of the State's procedure.'" *Welch* v. Artus, No. 1:04-CV-0205, 2007 WL 949652 at *19 (W.D.N.Y. 2007) (quoting *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002)).

Following *Stone*, review of Fourth Amendment claims in habeas petitions is proper

only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth

Amendment violations; or (2) the state has provided a corrective mechanism, but the

defendant was precluded from using that mechanism because of an unconscionable

breakdown in that process. *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *see Ramdeo v.*

*Phillips*, No. 1:04-CV-1157, 2007 WL 1989469 at *27 (E.D.N.Y. Jul. 9, 2007).

Petitioner cannot and does not contend that New York failed to provide a corrective

procedure to redress his alleged Fourth Amendment claim. New York's corrective procedure

for Fourth Amendment violations, codified at CPL §710.10 *et seq*., is facially adequate. *See*

CPL §710; *Capellan,* 975 F.2d at 70 n. 1. Under CPL §710, a defendant may move to

suppress evidence he claims was unlawfully obtained when he has "reasonable cause to

believe that such [evidence] may be offered against him in a criminal action." *Huntley v.*

*Superintendent, Southport Corr. Fac.*, No. 9:00-CV-191 (DNH/GHL), 2007 WL 319846 at *7

(N.D.N.Y. Jan. 30, 2007) (quoting CPL § 710.20). Petitioner had the "opportunity" for a "full

and fair litigation of his fourth amendment claims," *Gates*, 568 F.2d at 839, 840, and availed

himself of that procedure by filing his motion to suppress evidence. That petitioner pled

guilty before the trial court held suppression hearings or decided the motions does not

change the result. *See Mobley v. Kirkpatrick,* 778 F. Supp. 2d 291, 301 (W.D.N.Y. 2011)

("Notably, all that must be shown is that the State has provided an opportunity to litigate the

petitioner's Fourth Amendment claim; it matters not whether the petitioner actually 'took

advantage of the State's procedure.'") (quoting *Graham*, 299 F.3d at 134).

Nor do petitioner's claims demonstrate an unconscionable breakdown in the state's

corrective process. An "unconscionable breakdown in the state's process must be one that

calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.1988) (noting such examples as bribing of trial judge, government's knowing use of perjured testimony, or use of torture to extract a guilty plea), *aff'd*, 852 F.2d 59 (2d Cir.1988); *accord Capellan*, 975 F.2d at 70 (observing that "unconscionable breakdown" must entail some sort of "disruption or obstruction of a state proceeding"). The focus of the inquiry regarding whether there has been an "unconscionable breakdown" must be on "the existence and application of the corrective procedures themselves" rather than on the "outcome resulting from the application of adequate state court corrective procedures." *Capellan*, 975 F.2d at 71; *see Graham*, 299 F.3d at 134. Nothing in the record supports a finding that there was an unconscionable breakdown in the corrective process in this case.

Finally, to the extent petitioner argues he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts because counsel was ineffective, that claim is insufficient to establish the sort of unconscionable breakdown necessary for the Court address Petitioner's Fourth Amendment claims. *See Crenshaw v. Superintendent, Five Points Corr. Fac.*, 372 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (finding a petitioner's "assertions that the state courts were incorrect and defense counsel incompetent do not constitute the sort of 'breakdown' referred to in *Gates v. Henderson*" that would permit habeas review of a Fourth Amendment claim); *Shaw v. Scully*, 654 F. Supp. 859, 865 (S.D.N.Y. 1987) ("Where petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure . . . courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable

24

breakdown.") (citations omitted)); *Allah v. LeFevre*, 623 F. Supp. 987, 991-92 (S.D.N.Y. 1985) (rejecting a habeas claim that ineffective assistance of counsel can constitute an "unconscionable breakdown", stating that "it is plain from the majority opinion in *Gates* that the Court of Appeals had something other than ineffective assistance of counsel in mind when it speculated that an unconscionable breakdown in state process might permit federal habeas review.").

Accordingly, petitioner's Fourth Amendment claim is barred by *Stone*, and Ground Three of the petition is therefore dismissed.

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED and DISMISSED;** and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[4] and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:        July 26, 2016

Thomas J. McAvoy
Senior, U.S. District Judge

---

[4] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).